EVA COOK COMPHER, Respondent, v. MISSOURI & KANSAS TELEPHONE COMPANY, Appellant.

Kansas City Court of Appeals, December 2, 1907, and January 6, 1908.

1. MASTER AND SERVANT: Vice-Principal: Master's Liability: Chastising Servant. While the master has no right to chastise a servant and cannot delegate such authority to his vice-principal, yet he is liable for such chastisement by his vice-principal even though against his order, if done while in the scope of his employment, that is while in the act of superintendence within the purview of his duty. [Cases considered.]

2. ———: ———: ———: ———: Telephone Girl. A chief operator superintending the telephone girls at a switchboard approached one of the operators who was violating an instruction and whirled her around on the revolving chair and threw her against an obstruction. *Held*, the master was liable for the violence of his superintendent.

Appeal from Jackson Circuit Court.—*Hon. Thos J. Seehorn,* Judge.

AFFIRMED.

*Harkless, Crysler & Histed* for appellants.

(1) The master is not liable for the wilful trespass or assault of the servant unless the master directs it. (2) The exception to this rule is to the effect that the master may be held if the act falls within the scope of the servant's employment. But the act of the servant must not only be done when the servant is employed about the business, but it must pertain to the duties of the employment. (3) No authority can be implied on the part of the superior servant or vice-principal which the master himself does not possess. Jones v. St. L. N. P. Co., 43 Mo. App. 398; Hartman v. Muehlebach, 64 Mo. App. 565; Farber v. Railway, 116 Mo. 93, 94; Hudson v. Railway, 16 Kan. 470; Railway v. Milligan, 93 Am. St. 31, 135 Ala. 205; Wagner v. Haak, 170 Pa. St. 495; Railroad v. Baum, 26 Ind. 70; Golden v. Newbrand, 52 Ia. 59; Ware v. Canal Co., 15 La. 169; Howe v. Newmarch, 94 Mass. 49; Rounds v. Railroad, 64 N. Y. 129.

*C. W. Prince* and *Boyle, Guthrie & Smith,* for respondent, filed argument.

JOHNSON, J.—Action to recover damages for personal injuries alleged to have been negligently inflicted by defendant. The verdict and judgment were for plaintiff and defendant appealed. The only ground relied on for a reversal of the judgment is that the

learned trial judge erred in refusing defendant's request for a peremptory instruction to the jury to return a verdict in its favor. In disposing of the questions of law presented under this contention, we will accept as proved the facts adduced in evidence most favorable to the cause of action asserted.

At the time of the injury, July 21, 1902, plaintiff, then an unmarried woman about twenty years of age, was employed as a switchboard operator by defendant, a corporation engaged in the business of operating a telephone exchange in Kansas City. Together with some fifty other girls similarly employed, she was on duty at the switchboard in the central office. Each operator was required to attend to the calls from a hundred telephones and each was provided with a revolving chair to occupy while at work. The chairs were arranged in a straight line in front of the switchboard. The room was in charge of a chief operator, whose duty it was to see that the operators attended to their work in an orderly and business-like manner. While he had no authority to employ or discharge the operators, he had authority to enforce disciplinary orders either by reproving the offender or, if she persisted in being refractory, by sending her home. The chief operator on duty at the time of the occurrence in question observed that many of the girls had turned away from the board and were laughing and talking. This conduct was against the rules and, to restore proper order, he wrote a note in which he directed them to stop talking and to face the board, and passed the note down the line. Plaintiff, at the time, was busy answering calls and the note passed, unread by her. A few moments later, having no work to do, she turned her chair around in order to obtain a brief rest from the cramped position she occupied while facing the board. The chief operator, observing the movement in apparent violation of the order he had just given, angrily went to

plaintiff's chair, grabbed it by the back and, with great force and violence, whirled plaintiff around, exclaiming "Eva Cook, can't you face your board?" Plaintiff's knees and body collided with parts of the substructure of the switchboard and she sustained very severe injuries, the nature and extent of which it is not necessary to mention, since no point is made that the verdict was excessive.

It is conceded that the chief operator was the vice-principal of defendant for the purpose of maintaining discipline in the room, but it is denied that he had authority, either express or implied, to employ physical force to secure obedience to the rules of the company and it is argued that since defendant as plaintiff's master had no right to resort to physical chastisement for the enforcement of its orders, it could not delegate such right to its vice-principal and, consequently, that the excessive act of the chief operator must be regarded as his own and not as one for which the master should be held liable under the rule of *respondeat superior*.

We agree with defendant that the ancient rule of the common law which permitted a master to chastise his servants has no place in the jurisprudence of an enlightened civilization and is not recognized by American courts. But it does not follow, as defendant appears to think, that the absence of any right in defendant to assault plaintiff for the purpose of coercing her into obeying its orders relieves it from liability for the tortious act of its vice-principal in employing physical force. Old cases are to be found in England and a few in this country where a master has been held not to be liable for the torts of his servant in the absence of proof of an express direction or sanction by the master of the wrongful act, but no principle is now more firmly established than that which holds the master responsible for the torts of the servant committed within the scope of his employment and as part of his ser-

vice. The principle is based on the maxim that "what one does by another, he does himself," and we find the rules by which it should be applied to the facts of a given case to be most aptly expressed in the following quotation from Wood on the Law of Master and Servant, section 307: "It is not necessary, in order to fix the master's liability, that the servant should, at the time of the injury, have been acting under the master's orders or directions, or that the master should know that the servant was to do the particular act that produced the injury in question. It is enough if the act was within the scope of his employment, and if so, the master is liable, even though the servant acted wilfully and in direct violation of his orders.

"A master cannot screen himself from liability for an injury committed by his servant within the line of his employment, by setting up private instructions or orders given by him, and their violation by the servant. By putting the servant in his place, he becomes responsible for all his acts within the line of his employment, even though they are wilful and directly antagonistical to his orders. The simple test is, whether they were acts within the scope of his employment; not whether they were done while prosecuting the master's business; but whether they were done by the servant in furtherance thereof, and were such as may fairly be said to have been authorized by him. By authorized is not meant authority expressly conferred, but whether the act was such as was incident to the performance of the duties intrusted to him by the master, even though in opposition to his express and positive orders."

The test to be applied in the present case is to ascertain whether the tortious act of the vice-principal was one which reasonably and fairly may be said to have been an act of superintendence and not one which was so disassociated from the duties of the position of

chief operator that it should be regarded as prompted alone by the malice or wilfulness of the actor. We are of opinion that the act clearly was one of superintendence and, therefore, within the scope of the chief operator's employment and we find this conclusion to be sustained abundantly by the authorities in this State and elsewhere. [Haehl v. Railroad, 119 Mo. 325; Meade v. Railroad, 68 Mo. App. 92; Collette v. Rebori, 107 Mo. App. 711; Railroad v. Milligan, 135 Ala. 205; 33 So. 438; Hartman v. Muehlebach, 64 Mo. App. 565; Farber v. Railroad, 116 Mo. 81, 93; Hudson v. Railroad, 16 Kan. 470; Railroad v. Baum, 26 Ind. 70; Golden v. Newborn, 52 Ia. 59; Howe v. Newmarch, 94 Mass. 49; Rounds v. Railroad, 64 N. Y. 129.]

Defendant chiefly relies on the case of Jones v. Packet Company, 43 Mo. App. 398, decided by the St. Louis Court of Appeals, but to the extent that that case may be considered as being out of harmony with the application of the rule of *respondeat superior* to the facts of the present case, it has been twice repudiated by our sister court, first in effect, in the case of Voegeli v. The Pickel Marble & Granite Co., 49 Mo. App. 643, and afterwards in express terms in Collette v. Rebori, supra.

It follows that the learned trial judge committed no error in refusing defendant's request for a peremptory instruction and, accordingly, the judgment is affirmed. All concur.