Hillsborough, }
March 2, 1920. }

### DORIA RICHARD *v*. AMOSKEAG MANUFACTURING CO.

A master is responsible for the acts of his servant done in the performance of the master's work and as a means and for the purpose of performing it.

Where the use of any degree of physical force by a servant in the performance of his duty may be reasonably found to have been authorized by the master or is exerted by the servant as an incident to the service and in furtherance thereof, the master is liable if the force employed be unreasonable.

The defendant's superintendent had authority to see that the help remained at their work. His use of reasonable physical force to induce a servant to return to work, who was unable to understand a verbal order, was incidental to the superintendent's duty, and for his unreasonable exercise of force in such case the master was liable.

A ground of defence not referred to at the trial, nor submitted to the jury, must be understood, from the course of the trial, to have been waived.

A general exception to a charge without calling attention to an expression, which is afterwards claimed to be error, is a waiver thereof.

ACTION, for personal injuries which the plaintiff claims to have received by being pushed or thrown against a roping box by one Smith, who at the time had charge of the help in the room where the plaintiff worked. Trial by jury and verdict for the plaintiff. The defendant's motions for a nonsuit and for a directed verdict were denied subject to exception. Transferred from the May term, 1918, of the superior court by *Kivel*, C. J. The facts relevant to the exception are stated in the opinion.

*Aimé E. Boisvert* and *Taggart, Tuttle, Wyman & Starr* (*Mr. Wyman* orally), for the plaintiff.

*Warren, Howe & Wilson*, and *Louis A. Thorp* (*Mr. Howe* orally), for the defendant.

WALKER, J. The question is, whether the defendant is responsible for the injuries sustained by the plaintiff in consequence of the act of Smith in forcing her back into the room, where she was employed. The evidence justified the jury in finding that she was violating the

rules of the defendant in leaving her work and standing in or near the door preparatory to leaving the factory when the noon signal should be given; that Smith had immediate charge of the room and was charged with the duty of requiring the help, including the plaintiff, to stay "in the room or by their work until the whistle blew at twelve o'clock"; that at the time of the assault he was attempting to enforce this rule, and not to punish the plaintiff to gratify his personal spite, and that while thus engaged in the defendant's service and in the performance of his duty of superintendent of the help he used more force upon the plaintiff than was reasonably necessary or justifiable, which resulted in the injuries complained of. Much of the argument for the defendant is based upon the assumption of facts which upon the evidence the jury were not only not bound to find, but were at liberty to negative; as, for instance, that Smith's assault upon the plaintiff was vindictive and not resorted to as a means of performing his duty to the defendant. That there was evidence to the contrary is not open to doubt.

It is argued that the evidence does not warrant the finding of negligence on the part of the defendant. This contention is based upon the assumption that the use of any force by Smith was wilful and vindictive, and so an act of trespass, and not merely careless and unintentional and a negligent act. But the assumption is unsound. Because Smith used unreasonable force, it does not follow that he was not negligent in the means he adopted to perform his service of superintendence. There was ample evidence that he was engaged in doing what he had a right to do, and that he was not actuated by malice toward the plaintiff or by a desire to punish her, or to inflict bodily injury upon her. The jury were justified in finding his use of unwarranted force was due to his want of ordinary care in rightfully attempting to use such force as his employment authorized. But the law of the trial was that the action was one for negligence, and no exception was interposed by the defendant to the charge of the court which was clearly predicated upon that theory. To delay raising that objection until the case is before this court would seem to preclude the defendant from taking that position. *Gage* v. *Railroad*, 77 N. H. 289, 296. The same ruling applies to the argument that Smith and the plaintiff were fellow-servants. That point was not specifically referred to at the trial, was not submitted to the jury, and cannot now be profitably discussed. The inference is that it was understood the fellow-servant doctrine had no application. A forced construction of the language used by the court or

by counsel does not overcome the conclusion that the case was not tried upon that theory, and that the jury did not understand that issue was submitted. Nor was any request made for its submission.

The law applicable to the facts which the jury were justified in finding, upon the question of the defendant's liability, is not open to serious doubt in this jurisdiction. "The master is responsible for the acts of the servant while engaged in his master's work, which are done as a means and for the purpose of performing that work; and this is so, whether the wrong is done by the servant's performing his master's business in a negligent manner, or by a wanton or reckless purpose to accomplish it in an unlawful manner." *Rowell* v. *Railroad*, 68 N. H. 358, 359; *Cordner* v. *Railroad*, 72 N. H. 413. "However it may be in other jurisdictions, in this state the test to determine whether the master is liable to a stranger for the consequences of his servant's misconduct is to inquire whether the latter was doing what he was employed to do at the time he caused the injury complained of. If he was, the fact that he was not doing it in the way expected is immaterial." *Danforth* v. *Fisher*, 75 N. H. 111; *Patenaude* v. *Railroad*, 77 N. H. 74. The same principle is applicable when the assaulted party is a co-employee and not what is termed a stranger, or third party. 4 Lab. M. & S. s. 1466.

But it is argued that while this principle of law may be sound when the assaulting servant is authorized to use reasonable physical force upon or against a stranger to accomplish the master's purpose, as in the case of a railroad conductor in removing a trespasser from the train, it does not apply when the use of force is not authorized either expressly or impliedly by the master. But this is nothing more than saying that when no degree of physical force is reasonable or to be expected in the proper or usual method of performing the required service or work, it would be unreasonable to infer that the use of force was authorized or to hold that the jury could find that fact. This view of the law is illustrated by cases cited by the defendant; as in *Crelly* v. *Company*, 84 Kan. 19, where a local manager of a telephone exchange assaulted an operator, because she refused to sign a voucher for her pay; and in *Sunderland* v. *Company*, 133 Minn. 158, where a servant in seeking to collect a bill due his master assaulted the debtor because he used abusive language. If the master's liability is conceded to depend upon the question of authority reasonably incident to the work in hand, the jury might have found that the defendant authorized Smith to use some degree of force in keeping the help in the room engaged in the performance of their

work. When the plaintiff quitted her work it was Smith's duty to
call her attention to her violation of the rule of the room and in some
way to request her to resume her proper place. To make the request
verbally would have been ineffective because she did not understand
the English language, the only language he could use. He was
obliged to resort to some other means of informing her of his request,
as for instance by putting his hand upon her and leading or pushing
her back to the position she had wrongfully left. The use of some
degree of physical force might reasonably be found to have been
authorized by the defendant and it follows in accordance with the
defendant's argument and the authorities above referred to, that the
defendant would be liable for the excessive and unreasonable force
used by Smith in the performance of his duty to the defendant.

But the principle applied in cases of this character has been stated
to depend, not upon the question whether the master authorized the
employee or agent to use force, but upon the question whether the
latter used the force complained of as a means of doing what he was
employed to do. *Grant* v. *Company*, 190 Mass. 489; *Patenaude* v.
*Railroad*, 77 N. H. 74. When there is evidence that the assaulting
party was engaged within the scope of his employment under his
contract with the master and some degree of physical force toward
another servant becomes reasonably necessary for the accomplish-
ment of the master's purpose, the use of excessive force may render
the master liable, as it would in the case of a trespasser ejected by
similar violent means; especially where the fellow-servant doctrine
is not invoked, as it was not in the trial of this case. The acts of the
servant under such circumstances, though amounting to an unlawful
assault in violation of the express orders of the master, may be found
by the jury to be within the scope of his employment. "The simple
test is, whether they were acts *within the scope of his employment;*
not whether they were done while prosecuting the master's business:
*but, whether they were done by the servant in furtherance thereof, and
were such as may fairly be said to have been authorized by him.* By
*authorized* is not meant authority *expressly* conferred, but whether
the act was such as was incident to the performance of the duties in-
trusted to him by the master, even though in opposition to his ex-
press and positive orders." Wood M. & S. 307. If, on the other
hand, it appears that the unlawful act was in no proper sense inci-
dent to the servant's employment, although it may have been with a
purpose to promote the master's interest (*Cordner* v. *Railroad*, 72
N. H. 413; *Patenaude* v. *Railroad*, 77 N. H. 74), the plaintiff is not

entitled to recover, in the absence of ratification by the master, for the reason that the servant's act was not within the scope of his employment even incidentally, and consequently was unauthorized.

The principal difficulty in cases of this character has arisen, not so much in the statement of the law involved as in its application to the facts of particular cases. That the master is only liable when the servant's act was within the scope of his employment is recognized in practically all the cases; but the absence of a clear and definite definition of, that phrase has caused much confusion and apparent conflict in the authorities. *Penas* v. *Railway,* 112 Minn. 203, 223; see 27 L. R. A. 161, *note.* But since it presents a mixed question of law and fact it is doubtful if it is susceptible of exact definition as a legal proposition. Such acts as are reasonably incident to the service the servant is employed to render are within the scope of his employment, in the sense that the master's duty to a third party may be violated by the servant's negligent or malicious conduct in attempting to perform them. In this view it may not be inaccurate to say that as against the injured party the master authorized the servant to do the act causing the injury, although he may have expressly instructed the servant not to do it. If the act causing the injury is connected with or grows out of the service the servant is doing, the latter is within the scope of his employment and the master is liable. If, therefore, the service may reasonably require the exercise of force, under some circumstances force is authorized, and the master may be liable for its excessive or unreasonable use, upon the ground that the servant was within the scope of his employment, which has naturally resulted in injury to another, to whom the master owed the duty of abstaining from unnecessary violence.

In this connection it should be noted that while the use of reasonable force as a means of performing the required service may be incidental thereto and while the use of an unreasonable degree of force could not be justified as an incident to the service, the master's liability rests on the theory that, having authorized the use of reasonable force as a means for the accomplishment of the service, he is responsible for its negligent or wilful abuse by the servant. He is responsible not because the use of force was an incident of the service, but because its abuse caused the injury. In support of these general propositions the following additional authorities may be cited: *Citizens' Assurance Co.* v. *Brown,* [1904] A. C. 423; *Dickson* v. *Waldron,* 135 Ind. 507; *Hudson* v. *Railway,* 16 Kan. 470; *Crelly* v. *Company,* 84 Kan. 19; *Sunderland* v. *Company,* 133 Minn. 158, 159;

*Rogahn* v. *Company,* 79 Wis. 573; *Rounds* v. *Railroad,* 64 N. Y. 129; *Compher* v. *Company,* 127 Mo. App. 553; *Grant* v. *Company,* 190 Mass. 489; *Searle* v. *Parke,* 68 N. H. 311; *Turley* v. *Railroad,* 70 N. H. 348; *New Ellerslie Fishing Club* v. *Stewart,* 123 Ky. 8. The case of *Jones* v. *Company,* 43 Mo. App. 398, holding that where the second mate of a boat assaulted a deck hand for the purpose of making him work, the defendant is not liable for the wrong done, is particularly relied upon by the defendant in support of the argument that Smith was not within the scope of his employment. But that case is not only distinguishable from the present case, but as an authority it has been repudiated in *Collette* v. *Rebori,* 107 Mo. App. 711, 720 and in *Compher* v. *Company, supra,* and is contrary to the holdings in *Jebeles &c. Co.* v. *Booze,* 181 Ala. 456; *Avondale Mills* v. *Bryant,* 10 Ala. App. 507; *Rogahn* v. *Company, supra; The General Rucker,* 35 Fed. Rep. 152.

Little doubt can be entertained upon the evidence that Smith at the time of the assault was in charge of the room as superintendent and that it was one of his duties to the master to see that the help including the plaintiff, attended to their work during working hours. When the plaintiff left her machine and stood in the door preparatory to leaving the mill, she was not attending to her work, as Smith understood the rules of the mill and the duties of her employment. It thereupon became his duty to insist upon her returning to her work and remaining at her machine until the noon signal was given. The use of reasonable physical force as a means of performing this duty was incidental thereto. If he had taken her by the arm and led her back without unnecessary violence as he says he attempted to do, it could not be said that he was not acting within the scope of his employment as a superintendent. Especially is this true in view of the fact that a verbal request to her would have been ineffective as above suggested. The use of some degree of force would seem to be necessarily implied under such circumstances from his employment. The situation is no different in principle than it would have been if the plaintiff had been totally deaf, or if there had been so much noise and confusion in the room that Smith's voice was inaudible. Something more than verbal orders or requests would be necessary to induce the plaintiff to attend to the duties of her employment.

The act of Smith was an act of superintendence, performed for the benefit of the master, and was incidental to the work he was employed to do. *Compher* v. *Company, supra.* It was not an act

done merely to gratify his spite toward the plaintiff; nor was it done for the purpose of administering punishment to her. The verdict negatives any such inferences of fact. If Smith was authorized under the circumstances to use a reasonable degree of force to compel the plaintiff to attend to her work, there is no escape from the conclusion that the defendant is responsible for his negligence in using unreasonable force. The motions for a nonsuit and for a directed verdict were properly denied.

The defendant excepted to the instruction given to the jury that: "If Smith had been invested with apparent authority to enforce discipline the defendant is responsible for Smith's acts while he was engaged in the exercise of that authority." In another place in the charge the question for the jury to decide was stated as follows: "In the event of disobedience of the orders, did Smith have the apparent authority to enforce their execution for the purpose of maintaining discipline in the room?" The sense in which the word "apparent" was used was not explained; it was not defined; and the defendant now insists that the court erred in using the expression "apparent authority." It does not appear that the defendant asked for special instructions upon this point or intimated to the court the ground upon which it was claimed the charge was wrong. It is evident, if such an explanation had been made, the court might have substituted other language for the expression now objected to by the defendant, and thus have cured the assumed error. As the defendant remained silent after taking a general exception and failed to call attention to this expression of which it now complains, so that the court might have corrected what appeared to have been said, the defendant takes nothing by a general exception. *Bourassa* v. *Railway,* 75 N. H. 359, 362. Such is the general rule in this state, which has been applied in numerous cases, some of which are cited in the above case. Upon the ground of waiver the defendant's exception to the charge is unavailing.

*Exceptions overruled: judgment on the verdict.*

PEASLEE, J., did not sit: PLUMMER, J., dissented: the others concurred.

After the filing of the foregoing opinion the defendant made a motion for a rehearing upon several grounds, and pending a ruling thereon it applied to the superior court for certain amendments to the case. The presiding justice denied the motion for the amendments, and the defendant excepted.

*Aimé E. Boisvert* and *Taggart, Tuttle, Wyman & Starr* (*Mr. Wyman* orally), for the plaintiff.

*Warren, Howe & Wilson*, and *Louis A. Thorp* (*Mr. Howe* orally), for the defendant.

WALKER, J. The amendments of the case desired by the defendant appear to be unnecessary. The facts are fully reported in the case, so far as they are material. A rehearsal of the evidentiary facts requested do not show that the court committed any error in denying the motion.

The defendant's argument that the fellow-servant doctrine is open for discussion, because its exception to the denial of its motion for a nonsuit nominally raised the question, is futile, for the reason that the grounds upon which it based the motion when it was made and the course of the trial do not indicate that it relied upon that defence, but upon the claim that at the time the plaintiff was injured Smith was not acting within the scope of his authority and did not represent the master. No specific reference to the defence of fellow-service was made. Nor was any specific instruction on that point requested. It is clear that the defendant waived any right it might have had to present that view of the case. The brief remarks of the court in its charge upon the subject of vice-principalship were not excepted to by the defendant. Indeed it seems to have been conceded that Smith was the vice-principal of the defendant, who was liable for Smith's acts of superintendence.

The alleged error of the court in using the expression "apparent authority" in the charge cannot now be taken advantage of by the defendant, for the reason stated in the former opinion. But in addition to that, it appears that the defendant's position is unsound; for upon a reasonable interpretation of the language objected to, viewed in connection with the rest of the charge, it cannot be doubted that the court used the word "apparent" in the sense of the word implied and that the jury understood they might find from the character of the service Smith was employed to perform, that the defendant invested him with authority to see that the regulations in regard to the time when the employees should be attending to their work should be observed by them; that is, that it was apparent to the defendant, as it would be to reasonable men in the same situation, that such authority, if not expressly given, existed as a necessary incident of the employment of Smith as a superintendent of the room.

As the defendant's last exception cannot be sustained, and as the motion for a rehearing is unavailing the result is

*Exception overruled: former order affirmed.*

PARSONS, C. J., and PEASLEE, J., did not sit: YOUNG, J., concurred: PLUMMER, J., dissented on last order.